IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CR-128-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| LEROY BROOM, JR., | ) | |
| Defendant. | ) | |

On September 1, 2020, Leroy Broom, Jr. ("Broom") moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 39, 41, 44] and filed a memorandum and records in support [D.E. 45, 47]. On November 25, 2020, the United States responded in opposition [D.E. 49]. As explained below, the court denies Broom's motion.

I.

On August 21, 2017, pursuant to a written plea agreement, Broom pleaded guilty to two counts. Count one charged possession with intent to distribute a quantity of cocaine and count two charged possession of a firearm in furtherance of a drug trafficking crime. See [D.E. 26, 27]. On December 18, 2017, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 33, 36, 38]; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Broom's total offense level to be 15, his criminal history category to be III, and his advisory guideline range on count one to be 24 to 30 months' imprisonment and on count two to be 60 months' consecutive imprisonment. See [D.E. 38] 1. After thoroughly considering all

relevant factors under 18 U.S.C. § 3553(a), the court sentenced Broom to 24 months' imprisonment on count one and 60 months' consecutive imprisonment on count two, for a total of 84 months' imprisonment. See [D.E. 36, 37, 38]. Broom did not appeal.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75%

2

of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

       (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

       (ii) The defendant is—

           (I) suffering from a serious physical or medical condition,

           (II) suffering from a serious functional or cognitive impairment, or

           (III) experiencing deteriorating physical or mental health because of the aging process,

           that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

    (C) Family Circumstances.—

       (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See id. at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id. at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d

---

> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

As for Broom's request for compassionate release, Broom contends that he has exhausted his administrative remedies. See [D.E. 47] 4–5. On July 22, 2020, and again on August 11, 2020, Broom requested home confinement from the BOP. See id. On September 4, 2020, the BOP denied Broom's request. See id.; [D.E. 41-1]. The government has invoked section 3582's exhaustion requirement, contending that the BOP's denial of Broom's request for home confinement is insufficient to exhaust Broom's administrative remedies for his compassionate release request. See [D.E. 49] 1, 15–17; [D.E. 41-1]; United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020). The court assumes without deciding that Broom has exhausted his administrative remedies and addresses Broom's claim on the merits.

Broom seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Broom cites the COVID-19 pandemic and his health conditions, including obesity, "pre-diabetes," gastroesophageal reflux disease ("GERD"), a positive tuberculosis test, and a family history of diabetes and colon cancer. See [D.E. 47] 6–9, 10–15; [D.E. 39] 1; [D.E. 41] 1. Broom also cites the conditions at FCI Butner, his rehabilitation efforts, his release plan, and that he has served over 50% of his 84-month sentence. See [D.E. 39] 1; [D.E. 41] 1; [D.E. 47] 9–10, 16–17; [D.E. 47-1]; [D.E. 47-2].

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). While Broom states that he suffers from obesity, "pre-diabetes," GERD, a positive tuberculosis test, and a family history of

5

diabetes and colon cancer, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Broom serves his sentence. Accordingly, reducing Broom's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Broom's health conditions, the conditions at FCI Butner, his rehabilitation efforts, and his release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Broom's sentence. See United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Broom is 40 years old and engaged in very serious criminal behavior between August 2016 and March 2017. See PSR [D.E. 33] ¶¶ 8–10. While on state probation following a 2016 conviction for possession of a firearm by a felon, law enforcement officers searched Broom's residence on March 28, 2017. See id. ¶¶ 8, 25. During the search, officers discovered two 9mm handguns, a .38 caliber revolver, ammunition, and large amounts of cocaine and U.S. currency. See id. ¶¶ 8–10. Despite Broom's four prior felony convictions, and even though he was on state probation at the time, Broom stated that he purchased at least one of the firearms in July or August 2016 simply because it was "too good of a deal to pass up." See id. ¶ 9. Broom also trafficked large quantities of cocaine in Fayetteville, North Carolina while on state probation. See id. ¶¶ 8–9. Ultimately, Broom was responsible for possessing three firearms and ammunition in connection with his drug trafficking activities, as well as 226.8 grams of cocaine. See id. ¶ 10. Broom also is a violent

6

recidivist with convictions for larceny, resisting a public officer (two counts), possession of marijuana, willful obstruction of a law enforcement officer, robbery with a dangerous weapon, second degree kidnapping, possession of a firearm by a felon, and numerous driving offenses. See id. ¶¶ 15–26. Nonetheless, Broom has taken some positive steps while incarcerated. See [D.E. 39] 1; [D.E. 41] 1; [D.E. 47] 17; [D.E. 47-1]. The court also has considered Broom's exposure to COVID-19, his health conditions, the conditions at FCI Butner, his rehabilitation efforts, his release plan, and that he has served over 50% of his 84-month federal sentence. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and treat Broom, the section 3553(a) factors, Broom's arguments, the government's persuasive response, and the need to punish Broom for his serious criminal behavior, to incapacitate Broom, to promote respect for the law, to deter others, and to protect society, the court declines to grant Broom's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished).

As for Broom's request for home confinement, Broom seeks relief under the CARES Act. See [D.E. 39] 1; [D.E. 41] 1; [D.E. 47] 19. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). As such, the court dismisses Broom's request for home confinement.

7

II.

In sum, the court DENIES Broom's motion for compassionate release [D.E. 39, 41], and DISMISSES Broom's request for home confinement.

SO ORDERED. This 17 day of February 2021.

JAMES C. DEVER III
United States District Judge